OPINION OF THE COURT
Peter M. Forman, J.
Defendant stands accused by the grand jury of the County of Dutchess of four counts of promoting a sexual performance by a child, a class D felony, in violation of section 263.15 of the Penal Law; four counts of possessing a sexual performance by a child, a class E felony, in violation of section 263.16 of the Penal Law; and one count of endangering the welfare of a child, a class A misdemeanor, in violation of section 260.10 of the Penal Law.
By decision and order dated April 11, 2017, this court provided counsel with an opportunity to be heard as to whether the promoting a sexual performance by a child counts of the indictment should be dismissed. Specifically, counsel was directed to address the question of whether defendant can be charged with procuring lewd images of a 13-year-old girl based upon the electronic communications that he exchanged with her. Counsel was also directed to address the question of whether New York has geographic jurisdiction where the evidence presented to the grand jury demonstrates that the 13-year-old girl was in New York when she sent the lewd images to defendant, and that he was in Tennessee when he received those images.
The decision and order also provided counsel with an opportunity to be heard as to whether New York has geographic *718 jurisdiction over the eighth count of the indictment, which accuses defendant of possessing a sexual performance by a child. Specifically, the bill of particulars alleges that defendant possessed this image on August 21, 2015. However, the evidence presented to the grand jury demonstrates that defendant was in Tennessee on that date, and that he did not arrive in New York until September 23, 2015.
Finally, the decision and order provided counsel with an opportunity to be heard as to whether New York has geographic jurisdiction over the ninth count of the indictment, which accuses defendant of endangering the welfare of a child between March of 2015 and October 7, 2015. Specifically, the evidence presented to the grand jury demonstrates that defendant was in Tennessee during most of that time, and that he did not arrive in New York until September 23, 2015.
The court heard oral argument from counsel during a May 3, 2017 hearing, and has reviewed and considered their supplemental written submissions. For the reasons stated herein, the court finds that the evidence presented to the grand jury was legally sufficient to establish that defendant committed the crimes charged in the indictment. The court also finds that the evidence presented to the grand jury was legally sufficient to establish that New York has geographic jurisdiction over those crimes.
Counts One, Three, Five and Seven
A. Procurement
A person is guilty of promoting a sexual performance by a child “when, knowing the character . . . thereof, he produces, directs or promotes any performance which includes sexual conduct by a child less than seventeen years [old].” (Penal Law § 263.15.) For purposes of this statute, the term “promote” means “to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, . . . publish, distribute, circulate, disseminate, present, exhibit or advertise, or to offer or agree to do the same.” (Penal Law § 263.00 [5].)
“Although the term ‘procure’ is not defined in the Penal Law, the leading definition commonly assigned to the term is ‘to get possession of: obtain, acquire ... to get possession of by particular care or effort.’ ” (People v Keyes, 75 NY2d 343, 348 [1990].) Therefore, for purposes of Penal Law § 263.15, the term “procure” includes “the acquisition of child pornography, whether for personal consumption or for distribution to others.” (Id.)
*719 The indictment charges defendant with procuring three photos and one video that lewdly exhibit the vagina of a 13-year-old girl. The evidence presented to the grand jury demonstrates that defendant received these images from the 13-year-old girl who is depicted in them. While there is no evidence that defendant expressly requested that the 13-year-old girl send him these images, there is also no evidence that defendant discouraged the 13-year-old girl from sending him these images once he began to receive them.
The Court of Appeals has ruled that merely viewing child pornography is insufficient to support a conviction for promoting a sexual performance by a child (People v Kent, 19 NY3d 290 [2012]). Specifically, the Court held that “the defendant’s conduct must exceed mere viewing to encompass more affirmative acts of control ... To hold otherwise, would extend the reach of article 263 to conduct—viewing—that our Legislature has not deemed criminal.” (Id. at 301, 303.)
The evidence presented to the grand jury demonstrates that the 39-year-old defendant and the 13-year-old girl frequently engaged in electronic communications. During those communications, defendant repeatedly professed his love for the 13-year-old girl, and actively promoted her belief that they were in a romantic relationship. For instance, when the 13-year-old girl was feeling sick, defendant sent her a message stating “Here’s some kisses to help you feel better.” Defendant also called the 13-year-old girl “beautiful,” repeatedly professed his love for her, and referred to her as though she had taken his last name in marriage.*
The evidence also demonstrates that, at the same time that these flirtatious messages were being exchanged, the defendant and the 13-year-old girl also exchanged lewd messages that used code words for her vagina (Joy) and defendant’s penis (N-Crease). For instance, the following exchange occurred on August 26, 2015:
13-year-old girl: “Joy is wet. How is N-Crease? Is he hard?”
Defendant: “I love you.”
13-year-old girl: “Not Joy?”
Defendant: “LOL”
*720 13-year-old girl: “It’s OK, baby, She’s clean.”
Defendant: “Oh yeah?”
13-year-old girl: “Yeah.”
13-year-old girl: “Look at her, she’s as good as new. [image attached]. See baby, she’s okay. Call me when you can. I want to be with my man.”
Less than a week later, the following exchange occurred:
13-year-old girl: “How hard is N-Crease right now, because Joy wants her man.”
13-year-old girl: “I want my man.”
13-year-old girl: “How hard is N-Crease now, Joy, because Joy wants her man.”
Defendant: “Hello lover.”
Later that same day, the following exchange occurred:
13-year-old girl: “I love you.”
Defendant: “I love you [13-year-old girl’s name].”
13-year-old girl: “Joy is your pretty pink lemonade sugar.”
13-year-old girl: “I just touched Joy and I’m still horny. I need N-Crease.”
Defendant: “LOL, I love you.”
13-year-old girl: “I love you too Joseph.”
The next day, the following exchange occurred:
13-year-old girl: “Baby can I suck on your cock?”
13-year-old girl: “I need N-Crease to come down my throughout.”
Defendant: “Hello my love.”
Defendant: “I love you. Correction, I in love with you, pretty thing.”
13-year-old girl: “I’m in love with you too handsome.”
Nine days later, the following exchange occurred:
13-year-old girl: You sent a sticker. You’re so cute.”
Defendant: “I love you sexC.”
13-year-old girl: “I love you too sexC.”
The evidence presented to the grand jury revealed that the same lewd images of the 13-year-old girl’s vagina were recovered from defendant’s phone and the 13-year-old girl’s phone. That evidence also demonstrated that images of an erect penis were recovered from defendant’s phone, and that these same images were also recovered from the 13-year-old girl’s phone.
*721 The messages that the 13-year-old girl sent to defendant were undeniably more explicit than the messages that defendant sent to her. Nonetheless, defendant clearly nurtured the 13-year-old girl’s belief that they were in a loving relationship that included a sexual component. For instance, defendant placed a photo of the 13-year-old girl’s midsection on his Facebook page, with the caption “The belly that will have my baby.” Defendant’s use of phrases like “lover” and “sexC” to describe the 13-year-old girl, and his expressions of love and affection for her in response to her more sexually explicit messages, provide further evidence that defendant engaged in this conduct for the purpose of procuring the lewd images that were recovered from his phone. Finally, the revelation that the same images of an erect penis were found on both of their phones supports an inference that defendant not only received lewd photos from the 13-year-old girl, but that he also sent lewd photos to her.
Under these circumstances, the evidence presented to the grand jury was legally sufficient to establish that defendant engaged in conduct that exceeded the mere viewing of child pornography. (People v Kent, 19 NY3d 290, 301 [2012].) That evidence also warrants a finding that defendant obtained child pornography through particular care or effort, by engaging in conduct that was designed to manipulate a 13-year-old girl, and to procure the lewd images that were recovered from his cell phone. (People v Keyes, 75 NY2d 343, 348 [1990].)
Viewing the evidence presented to the grand jury in the light most favorable to the People, counts one, three, five and seven of the indictment are based upon evidence which is legally sufficient to establish that defendant committed the offenses as set forth therein, and the competent and admissible evidence before the grand jury provides reasonable cause to believe that defendant committed those offenses (CPL 190.65; People v Jensen, 86 NY2d 248 [1995]; People v Jennings, 69 NY2d 103 [1986]; People v Swamp, 84 NY2d 725 [1995]; People v Haney, 30 NY2d 328 [1972]).
B. Geographic Jurisdiction
“The general rule in New York is that, for the State to have criminal jurisdiction, either the alleged conduct or some consequence of it must have occurred within the State.” (People v McLaughlin, 80 NY2d 466, 471 [1992]; see also People v Carvajal, 6 NY3d 305, 312 [2005] [“CPL 20.20 ... has codified the general principle that, for New York to exercise criminal juris *722 diction, some alleged conduct or a consequence of that conduct must have occurred in the state”].)
For purposes of establishing geographic jurisdiction, a written statement made by a person in one jurisdiction to a person who is in another jurisdiction, whether by means of telecommunication or by any other method of communication, is deemed to be made in each such jurisdiction. (CPL 20.60 [1].) Similarly, a person who causes property to be transported from one jurisdiction to another jurisdiction, whether by means of mail or any other method, is deemed to have personally transported it in each jurisdiction. (CPL 20.60 [2].)
Defendant made numerous written statements while he was in Tennessee that he sent to the 13-year-old girl while she was in Dutchess County. Therefore, for purposes of establishing geographic jurisdiction, the statements that defendant made while he was in Tennessee are deemed to have been made in New York. (CPL 20.60 [1].)
The 13-year-old girl transported lewd photos and video to Tennessee by sending them from her phone while she was in Dutchess County. As previously explained, the evidence presented to the grand jury warrants a finding that defendant obtained these photos and video through particular care or effort, by exchanging a series of communications that were designed to procure these images from the 13-year-old girl. Therefore, by causing the 13-year-old girl to digitally transport these images to Tennessee from New York, defendant is deemed to have transported those images in New York. (CPL 20.60 [2].)
Accordingly, the evidence presented to the grand jury was legally sufficient to establish that New York has geographic jurisdiction over the crimes charged in counts one, three, five and seven of the indictment. (See People v Giordano, 87 NY2d 441 [1995] [evidence was legally sufficient to establish that New York had geographic jurisdiction over promoting gambling indictment, where the defendants placed telephone calls to Nassau County for purposes of advancing their illegal bookmaking operation]; People v Allen, 149 AD3d 764 [2d Dept, Apr. 5, 2017] [evidence was legally sufficient to establish that New York had geographic jurisdiction over promoting prostitution indictment, where the defendant exchanged emails promoting an illegal Phillippines-based prostitution operation with an undercover officer who was located in Westchester County]; People v Taylor, 304 AD2d 434, 435-436 [1st Dept 2003] [evidence was legally sufficient to establish that New York had *723 geographic jurisdiction over scheme to defraud indictment, where the defendant made numerous fraudulent statements during telephone conversations with an undercover officer located in New York County].)
The evidence presented to the grand jury also supports an alternate basis for establishing geographic jurisdiction in New York. Specifically, the legislature has “created a number of statutory exceptions to strict territorial principles of geographic jurisdiction.” (People v Fea, 47 NY2d 70, 75 [1979].) “Relevant to this case is the adoption of the protective theory of jurisdiction, which is premised on the postulate that the jurisdiction of the State, or one of its counties, may be exercised over conduct outside its geographical borders where such conduct was intended to have a deleterious effect.” (Id. at 76.) Specifically, CPL 20.20 states:
“A person may be convicted in the criminal courts of this state of an offense defined by the laws of this state, committed either by his own conduct or by the conduct of another for which he is legally [responsible] pursuant to section 20.00 of the penal law, when: . . .
“2. Even though none of the conduct constituting such offense may have occurred within this state:
[[Image here]]
“(b) The statute defining the offense is designed to prevent the occurrence of a particular effect in this state and the conduct constituting the offense committed was performed with [the] intent that it would have such effect herein.”
CPL 20.10 (4) defines “particular effect of an offense” as follows:
“When conduct constituting an offense produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction, or result in the defrauding of persons in such jurisdiction, such conduct and offense have a ‘particular effect’ upon such jurisdiction.”
When article 263 of the Penal Law was adopted, the legislative declaration found
“that there has been a proliferation of exploitation *724 of children as subjects in sexual performances. The care of children is a sacred trust and should not be abused by those who seek to profit through a commercial network based upon the exploitation of children. The public policy of the state demands the protection of children from exploitation through sexual performances.” (L 1977, ch 910, § 1.)
The legislative history to article 263 is also “replete with references to the enormity of the problem of child pornography.” (People v Keyes, 75 NY2d 343, 348 [1990].) Therefore, the legislature “urged law enforcement officers to vigorously enforce the provisions of the article.” (Id. at 347.)
The Internet was an unknown forum to legislative drafters in 1977, when article 263 was adopted with the express intent “to eradicate the social evil of child pornography.” (People v Kent, 19 NY3d 290, 299-300 [2012].) It is beyond cavil that the Internet “now provides a readily accessible and expansive marketplace for illicit material.” (Id. at 300.) It is equally undisputed that “[t]he resulting danger to the safety and welfare of children cannot be overstated.” (Id.)
Congress has long recognized that child pornography poses a danger not only to children, but to the entire community. As stated in the legislative findings to the Child Pornography Prevention Act of 1996, “the existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.” (Pub L 104-208 § 121 [10] [A], 110 US Stat 3009 [104th Cong, 2d Sess, Sept. 30, 1996] [18 USC § 2251 Note].) Federal district courts have also recognized the danger that child pornography poses to the entire community in the digital age. (United States v Valerio, 9 F Supp 3d 283, 292 [ED NY 2014] [where the defendant was charged with receiving images of child pornography, the court found that defendant “could cause . . . extreme harm to children and the community” “by the click of a computer key or tap of a touchscreen on a mobile phone”]; United States v Reiner, 468 F Supp 2d 393, 397-400 [ED NY 2006] [recognizing that the facilitation of child pornography through online communications represents a danger to the community].)
Article 263 of the Penal Law was enacted for the express purpose , of protecting children in New York from exploitation through sexual performances. Defendant’s conduct in procuring lewd images from a 13-year-old girl in New York is the type *725 of conduct that this statutory scheme was designed to eradicate. This conduct also produced consequences which have a materially harmful impact upon the welfare of the community. Therefore, the evidence presented to the grand jury was legally sufficient to establish that New York has geographic jurisdiction over these crimes because defendant’s conduct had the requisite “particular effect” in this state, with the intent that it would have such effect (CPL 20.20 [2] [b]).
Count Eight
Count eight of the indictment accuses defendant of possessing a sexual performance by a child. The indictment identified the date of that possession as October 7, 2015. However, the bill of particulars alleged that defendant committed this crime on August 21, 2015. Since defendant was in Tennessee on that date, the court provided counsel with the opportunity to be heard on whether New York has geographic jurisdiction over that crime.
The People have since notified the court and defense counsel that the bill of particulars contained an error. Specifically, the People state that count eight of the indictment correctly identified the date as October 7, 2015, and that the bill of particulars identified the wrong date. Therefore, the People have moved to amend the bill of particulars to correct this error.
The People’s motion to amend the bill of particulars is granted. (CPL 200.95 [8].) This amendment does not change the theory of the People’s case, has not caused defendant any prejudice, conforms to the evidence presented to the grand jury, and remedies an inconsistency between the indictment and the bill of particulars. (People v West, 271 AD2d 806, 807 [3d Dept 2000]; People v Jarvis, 215 AD2d 588, 588 [2d Dept 1995]; People v Kilgore, 168 AD2d 830, 831 [3d Dept 1990].)
Viewing the evidence presented to the grand jury in the light most favorable to the People, count eight is based upon evidence which is legally sufficient to establish that defendant committed the offense as set forth therein, and the competent and admissible evidence before the grand jury provides reasonable cause to believe that defendant committed that offense (CPL 190.65; People v Jensen, 86 NY2d 248 [1995]; People v Jennings, 69 NY2d 103 [1986]; People v Swamp, 84 NY2d 725 [1995]; People v Haney, 30 NY2d 328 [1972]).
*726 Count Nine
The ninth count of the indictment accuses defendant of endangering the welfare of a child between March of 2015 and October 7, 2015. Although defendant was in Tennessee for most of that time, the evidence presented to the grand jury was legally sufficient to establish that New York has geographic jurisdiction over this offense for the reasons stated above. (See also People v Bernardo, 84 AD3d 1717, 1718 [4th Dept 2011] [New York had geographic jurisdiction over endangering the welfare of a child indictment, where alleged course of conduct occurred partly in New York and partly in Massachusetts]; People v Hogle, 18 Mise 3d 715 [Crim Ct, NY County 2007] [New York had geographic jurisdiction over endangering the welfare of a child charge, where alleged course of conduct started in Virginia, and continued in New York].)
Viewing the evidence presented to the grand jury in the light most favorable to the People, count nine of the indictment is based upon evidence which is legally sufficient to establish that defendant committed the offense as set forth therein, and the competent and admissible evidence before the grand jury provides reasonable cause to believe that defendant committed that offense (CPL 190.65; People v Jensen, 86 NY2d 248 [1995]; People v Jennings, 69 NY2d 103 [1986]; People v Swamp, 84 NY2d 725 [1995]; People v Haney, 30 NY2d 328 [1972]).

 The evidence presented to the grand jury also revealed that a number of these electronic communications were exchanged through Facebook Chat, and that the 13-year-old girl had updated her Facebook profile by taking defendant’s last name, as though they were married.