879 A.2d 1111

**Jonathan George MOORE**

v.

**STATE of Maryland.**

**No. 143 Sept. Term 2004.**

Court of Appeals of Maryland.

Aug. 11, 2005.

448

Claudia A. Cortese, Assistant Public Defender (Nancy S. Forster, Public Defender, of Baltimore) on brief, for appellant.

Devy Patterson Russell, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, of Baltimore) on brief, for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

The question we must decide in this case is whether a person who downloads onto a computer visual representations of a minor engaged in obscene acts or sexual conduct violates Md.Code (2002, 2004 Cum.Supp.), § 11–207(a)(3) of the Criminal Law Article[1] proscribing the "use [of] a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct." We shall answer that question in the negative and reverse.

## I.

Moore was indicted by the Grand Jury for St. Mary's County in a two count indictment, alleging violations of § 11–207(a)(3) and § 11–208(a) respectively. Count I alleged that Moore had "us[ed] a computer to depict and describe a minor engaging in an obscene act, sadomasochistic abuse, and sexual conduct" in violation of § 11–207(a)(3). Count II alleged that Moore "knowing[ly] possess[ed] a film, videotape, photograph, and other visual representation depicting an individual under the age of 16 years ... engaged in sexual conduct" in violation of § 11–208(a).

Before the Circuit Court on June 21, 2004, Moore entered a plea of not guilty and proceeded on an agreed statement of facts. The State read the following agreed statement of facts into the record:

"[O]n or about October 7, 2003 a search and seizure warrant was served on the defendant's residence located at apartment 1012 Valley Court, Lexington Park, Saint Mary's

---

1. Unless otherwise indicated, all future statutory references will be to Md.Code (2002, 2004 Cum.Supp.), Criminal Law Article.

County. The defendant, Jonathan G. Moore, was present when the warrant was served. He would be identified as the gentleman on my left. Upon entering the home, Detective Hall read Mr. Moore his Miranda rights. Mr. Moore acknowledged that he understood his rights and voluntarily waived those rights. The detective located a computer in the residence, which the defendant identified as being his computer. The defendant then voluntarily assisted the detectives in examining the computer. The defendant opened a file under My Documents named 'Cuts', quote unquote. The detective observed numerous photographic images in this file which included females who appeared to be under the age of 16. One file showed a female who appeared to be approximately three to five years old being penetrated in her vagina by a penis from an adult male. The defendant then opened the Windows Media Player on his computer, which listed numerous video files. He stated he knowingly down loaded from a web site named Kazza, K–A–Z–Z–A, dot com. Detectives then viewed the video file, and I will describe one of them, I think [defense counsel] and I agreed there are several others of this ilk, rather than go through them all. I will describe one of them. It was titled 'Four Year Old Refusal Come Shot.' The three second video shows an adult male ejaculating on the face and mouth of a nude white female who appears to be three to four years old.

"A further search of the residence revealed computer printouts near the defendant's bed. Many of the images on the printouts were females who appeared to be under the age of 16 and engaged in sexual intercourse and various sex acts.

"The defendant stated he printed those pictures from various web sites. A green, unlabeled floppy disc was also recovered from the home. The disc contained a file named 'cuts.' Inside the file were 11 photographs, some of which showed females who appeared to be under age of 16 years old engaged in sexual intercourse and various sex acts.

"The computer and other described items were seized by the detective. The computer case sent to the Computer Crimes Unit of the Maryland State Police Crime Lab where it was examined by a computer technician. An examination of the defendant's computer revealed it had two hard drives. An examination of the first hard drive revealed the following, 47 images of individuals who appeared to be under the age of 16 engaged in sexual intercourse and various sex acts, 32 images of individuals who appeared to be under the age of 16 in various stages of undress.

"Examination of the second hard drive revealed the following, 28 images of individuals who appeared to be under the age of 16 engaged in sexual intercourse and various sex acts, 13 images of individuals who appeared to be under the age of 16 and in various stages of undress, 11 video clips showing individuals who appeared to be under the age of 16 and engaged in intercourse and various sex acts.

"The defendant was interviewed at his house himself and gave a voluntary statement to the detectives. He stated that he downloaded the material from a web site named Kazza dot com, he stated he had not distributed the material to anyone nor has he engaged in making any pictures from the videos himself. He stated he began down loading the child pornography from late August of 2003 and that he used it for his own sexual gratification. The parties agreed to stipulate that the—a finder of fact would determine the age of all of the individuals on the pictures and videos and were engaged in sexual intercourse and sexual acts would be under 16 years old.

"The State is not alleging the defendant was involved in the taking—in the taking of the pictures or videos recovered. The State is not alleging the defendant distributed any of the recovered images or videos or that the defendant did possess them with the intent to distribute them.

"The computer which contained the aforementioned images or photos and images were recovered from the defendant's residence which was located in Saint Mary's County."

Moore moved for a judgment of acquittal as to Count I, arguing that his conduct was not prohibited by § 11–207(a)(3). The court denied the motion and found Moore guilty of both counts in the indictment. The court reasoned that the ordinary, plain meaning of the statutory language proscribed the conduct at issue and that Moore's acts fell within the intended scope of the statute. The court merged the two counts for sentencing purposes and sentenced Moore to a term of three years incarceration on Count I, with all but nine months suspended.[2]

Moore noted a timely appeal to the Court of Special Appeals. Before that court considered the case, we granted certiorari on our own initiative to consider the following question:

"Does a person who downloads visual representations of a minor engaged in obscene acts or sexual conduct from a computer violate Md. Crim Law, § 11–207(a)(3)'s proscription against 'us[ing]' a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse or sexual conduct?' "

385 Md. 511, 869 A.2d 864 (2005).

## II.

Under § 11–207(a)(3), a person may not "use a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct...." To resolve the issue before us, we must interpret the phrase "to use a computer to depict or describe."

Interpretation of a statute is a question of law, and, therefore, we review *de novo* the decision of the Circuit Court. *See Collins v. State,* 383 Md. 684, 688, 861 A.2d 727, 730 (2004). The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *Piper Rudnick v. Hartz,* 386 Md. 201, 218, 872 A.2d 58, 68 (2005).

---

**2.** Moore has not appealed his conviction of possession of child pornography under § 11–208.

In ascertaining legislative intent, we first examine the plain language of the statute, and if the plain language of the statute is unambiguous and consistent with the apparent purpose of the statute, we give effect to the statute as it is written. *Id.*

When there is more than one reasonable interpretation of a statute, the statute is ambiguous. *Comptroller v. Phillips,* 384 Md. 583, 591, 865 A.2d 590, 594 (2005). If the statutory language is ambiguous, we resolve that ambiguity in light of the legislative intent, considering the legislative history, case law, and statutory purpose. *See id.* We consider not only the ordinary meaning of the words, but also how that language relates to the overall meaning, setting, and purpose of the act. *See Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004). We take into account the history of the statute, the evils or mischief the Legislature sought to remedy, and the "prevailing mood of the legislative body with respect to the type of criminal conduct involved." *Gargliano v. State,* 334 Md. 428, 436, 639 A.2d 675, 678 (1994) (quoting *Randall Book Corp. v. State,* 316 Md. 315, 327, 558 A.2d 715, 721 (1989)). We seek to avoid construction of a statute that is unreasonable, illogical, or inconsistent with common sense. *See Gwin v. MVA,* 385 Md. 440, 462, 869 A.2d 822, 835 (2005). We construe a statute as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory. *Phillips,* 384 Md. at 591, 865 A.2d at 594.

## III.

The federal government and almost every state in the country have enacted laws related to child pornography. *See New York v. Ferber,* 458 U.S. 747, 758, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982) (stating that "virtually all of the States and the United States have passed legislation proscribing the production of or otherwise combating 'child pornography'"); *Outmezguine v. State,* 97 Md.App. 151, 162, 627 A.2d 541, 546 (1993), *aff'd* 335 Md. 20, 641 A.2d 870 (1994) (noting that by

1982, the federal government and forty-seven states had enacted statutes specifically addressing child pornography). The Supreme Court has recognized that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Ferber*, 458 U.S. at 757, 102 S.Ct. at 3355. In *Ferber*, the Court discussed extensively the danger of child pornography and the detrimental effect it has on children. The Court stated as follows:

"The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled. Indeed, there is no serious contention that the legislature was unjustified in believing that it is difficult, if not impossible, to halt the exploitation of children by pursuing only those who produce the photographs and movies. While the production of pornographic materials is a low-profile, clandestine industry, the need to market the resulting products requires a visible apparatus of distribution. The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product. Thirty-five States and Congress have concluded that restraints on the distribution of pornographic materials are required in order to effectively combat the problem, and there is a body of literature and testimony to support these legislative conclusions."

*Id.* at 759–60, 102 S.Ct. at 3355–56 (footnotes omitted).

In Maryland, two statutes target child pornography specifically. Section 11–207(a), provides as follows:

"(a) *Prohibited.*—A person may not:

"(1) cause, induce, solicit, or knowingly allow a minor to engage as a subject in the production of obscene matter or a visual representation or performance that depicts a minor engaged as a subject in sadomasochistic abuse or sexual conduct;

"(2) photograph or film a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct;

"(3) use a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct;

"(4) knowingly promote, distribute, or possess with the intent to distribute any matter, visual representation, or performance that depicts a minor engaged as a subject in sadomasochistic abuse or sexual conduct;  or

"(5) use a computer to knowingly compile, enter, transmit, make, print, publish, reproduce, cause, allow, buy, sell, receive, exchange, or disseminate any notice, statement, advertisement, or minor's name, telephone number, place of residence, physical characteristics, or other descriptive or identifying information for the purpose of engaging in, facilitating, encouraging, offering, or soliciting unlawful sadomasochistic abuse or sexual conduct of or with a minor."

A violation of this section is a felony, and, upon conviction, the defendant is subject to imprisonment not exceeding ten years and a fine for the first offense, and imprisonment not exceeding twenty years and a fine for each subsequent violation. § 11–207(b).

Possession of child pornography is prohibited by § 11–208(a), which provides as follows:

"(a) *Prohibited.*—A person may not knowingly possess a film, videotape, photograph, or other visual representation depicting an individual under the age of 16 years:

"(1) engaged as a subject of sadomasochistic abuse;

"(2) engaged in sexual conduct;  or

"(3) in a state of sexual excitement."

Violation of this section is a misdemeanor. § 11–208(b). Upon conviction, the defendant is subject to imprisonment not exceeding one year and a fine for the first offense, and imprisonment not exceeding two years and a fine for each subsequent offense. *Id.*

Before this Court, Moore argues that his conduct of downloading the prohibited materials onto his computer did not violate § 11–207(a)(3) because the statute criminalizes the *creation* of obscene materials using a computer, not mere possession of such materials obtained through the use of a computer. Moore argues that the statute is ambiguous because the operative word "depict" is subject to two or more reasonable meanings. He concedes that one interpretation includes simply using a computer to download an image generated by someone else and posted on the Internet. He asserts, however, that "use a computer to depict or describe" also means to create the visual representation. Moore then argues that the legislative history indicates that the General Assembly did not intend to criminalize the downloading and mere possession of child pornography under § 11–207, that having been covered by § 11–208(a).

The State argues that the statute is unambiguous and that there is no need to consider legislative intent in enacting the statute. The State maintains that the plain language of the statute proscribes the use of a computer to download child pornographic images. Even if the statute were ambiguous, the State contends that the legislative history indicates that the Legislature intended the scope of § 11–207 to be expansive, thus separately criminalizing Moore's conduct.

## IV.

### A.

Section 11–207 does not define the phrase "use a computer to depict or describe." As with all legislation in this sensitive area that lies outside the protection of the First Amendment of the United States Constitution, the conduct to be prohibited must be defined adequately by the statute, as

written or authoritatively construed. *See Ferber,* 458 U.S. at 764, 102 S.Ct. at 3358.

Moore's interpretation of the statutory phrase "use a computer to depict or describe" as "use a computer to create" is consistent with the ordinary usage of "depict" and "describe." "Depict" is defined as either "to form a likeness of by drawing or painting" or "to represent, portray, or delineate in other ways than in drawing or painting." Webster's Third New International Dictionary 605 (1961) [hereinafter "Webster's"]; *see also Kelly v. William Morrow & Co.,* 186 Cal.App.3d 1625, 231 Cal.Rptr. 497, 500 (1986) (quoting Webster's); Funk & Wagnalls New Standard Dictionary of the English Language 683 (1952) [hereinafter "Funk & Wagnalls"] (defining "depict" as "[t]o portray or picture, as in words; describe or represent vividly" and "to portray or paint in colors"). "Describe" means "to represent by words written or spoken for the knowledge or understanding of others." Webster's, *supra,* at 610; *see also* Funk & Wagnalls, *supra,* at 687 (defining "describe" as "[t]o give the characteristics of, as in words or by signs, so that another may form a mental image or idea").

The definitions indicate that the terms denote creative acts. Artists and artisans form a likeness by drawing or painting—they depict. Poets, narrators, and orators represent, portray, or delineate—they depict—and represent by words—they describe. A person who photographs or films pornographic images of a child, who captures such images directly into a computer by means of a digital camera or who first translates a motion picture or photograph of such images into a computer file is engaged in a creative act even though the perverse, heinous, and cruel nature of this creative act differentiates it from the creative acts that society values and tolerates.

To the contrary, the State's interpretation of "use a computer to depict or describe" as "use a computer to download" does not accord with the ordinary usages of depict and describe. The definition of "download" is different than the definitions of "depict" and "describe." "Download" means to transfer or copy a file. *See* Darrel Ince, *A Dictionary of the Internet* 98

(2001) (defining "download" as "[t]he copying of a file or collection of files from one computer to another"); The Random House Dictionary of the English Language 590 (2d ed.1987) (defining "download" as "to transfer (software, data, character sets, etc.) from a distant to a nearby computer, from a larger to a smaller computer, or from a computer to a peripheral device"). The definition of "download" makes clear that to download is a different act than to depict and describe. The person who captures an image directly into a computer by means of a digital camera or who first converts the motion picture or photograph into a computer file has depicted that image. The person who downloads that image merely has copied and saved the file—*i.e.* has taken possession of the file.

The grammatical form of "depict or describe" further evidences that the meaning of the statute is to use a computer to create, not to use a computer to download. Section 11–207(a)(3) states "to use a computer to depict or describe," employing the verb forms of "depict" and "describe." Moore's interpretation of "depict or describe" as "to create" conforms with the verb forms of the terms. The State's interpretation conforms with the use of depict or describe either in the passive form, such as "that depict" or "that describe," or in the nominalized form (*i.e.* as abstract nouns), such as "depiction" or "description." *See* Joseph M. Williams, *Style: Ten Lessons in Clarity & Grace* 43–44 (4th ed.1994) (discussing nominalizations). The person who downloads a picture transfers and copies a depiction or a file that depicts—the image already has been depicted when the person downloads it. The act of downloading is covered by § 11–208, which prohibits a person from knowingly possessing a "visual representation *depicting* an individual under the age of 16 years" (emphasis added). Section 11–208 prohibits the possession of an image that already has been depicted, or created. Thus, the possession statute employs the nominalized, gerund form of the verb depict. *See id.*

Similarly, § 11–207(a) uses the passive form of depict in two other provisions. A person may not "cause, induce, solicit, or knowingly allow a minor to engage as a subject in the produc-

tion of obscene matter or a visual representation or performance *that depicts* a minor ...." § 11–207(a)(1) (emphasis added). A person may not "knowingly promote, distribute, or possess with the intent to distribute any matter, visual representation, or performance *that depicts* a minor ...." § 11–207(a)(4) (emphasis added). These two provisions do not concern the creation of child pornography, but rather proscribe the recruitment of children for such offensive material or the distribution of child pornography that has been created. As such, the statute employs the passive voice to describe that which results from the recruitment and that which is distributed. In contrast, § 11–207(a)(3) governs the creation of child pornography by computer and thus uses the active forms of depict and describe.

The Illinois legislature has articulated this distinction between the verb "depict" and the nominalizations "depiction" or "depicting." Illinois proscribes child pornography in 720 Ill. Comp. Stat. 5/11–20.1 (2005). The Illinois provision parallel to § 11–207(a)(2) and (3) defines child pornography as when a person "films, videotapes, photographs, or otherwise *depicts* or portrays by means of any similar visual medium or reproduction or *depicts* by computer any child...." 720 Ill. Comp. Stat. 5/11–20.1(a)(1) (emphasis added). That crime constitutes a Class 1 felony. *Id.* at 5/11–20.1(c). The Illinois possession provision defines child pornography as when a person "with knowledge of the nature or content thereof, possesses any film, videotape, photograph or other similar visual reproduction or *depiction* by computer of any child...." *Id.* at 5/11–20.1(a)(6) (emphasis added). That crime constitutes a Class 3 felony. *Id.* at 5/11–20.1(c). Thus, Illinois employs the verb "depict" for its version of § 11–207(a)(2) and (3) and the nominalization "depiction" for its version of § 11–208. In 5/11–20.1(f), Illinois defines these two terms as follows:

"(4) 'Depict by computer' means to generate or create, or cause to be created or generated, a computer program or data that, after being processed by a computer either alone or in conjunction with one or more computer programs,

results in a visual depiction on a computer monitor, screen, or display.

"(5) 'Depiction by computer' means a computer program or data that, after being processed by a computer either alone or in conjunction with one or more computer programs, results in a visual depiction on a computer monitor, screen, or display."

Under these definitions, a person who creates the computer program or data "depicts by computer," and thus violates the Illinois version of § 11–207(a)(3). A person who downloads a program possesses a "depiction by computer," and thus violates the Illinois version of § 11–208(a). The Illinois statute is instructive in that it illustrates that legislatures are aware of the distinctions between "depict" and "depiction."

We conclude that the plain language of the statutory terms "to depict or describe" is unambiguous. The plain meaning of "use a computer to depict or describe" is to use a computer to create, not to use a computer to download. We hold that a person who downloads visual representations of a minor engaged in obscene acts or sexual conduct does not violate the proscription of § 11–207(a)(3) against "us[ing] a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct." Accordingly, the Circuit Court erred in finding that Moore violated § 11–207(a)(3).

### B.

Our conclusion is bolstered by the legislative history of § 11–207(a)(3). In 1978, Congress passed Pub.L. No. 95–225, the Protection of Children Against Sexual Exploitation Act, 18 U.S.C. §§ 2251–2253. The federal law punished the inducement or employment of minors to engage in sexually explicit conduct "for the purpose of producing any visual or print medium depicting such conduct" if the visual or print medium was intended for interstate or foreign commerce. *Id.; see also Outmezguine,* 97 Md.App. at 159–60, 627 A.2d at 545. The federal act represented a recognition of the interstate nature of the traffic in child pornography and the failure of

most states to target child pornography. *See Outmezguine,* 97 Md.App. at 160, 627 A.2d at 545.

Three months after Congress passed the federal act, the Maryland General Assembly enacted the first Maryland statute to address child pornography. *See* 1978 Md. Laws, Chap. 573. The Maryland statute was codified as Md.Code (1957, 1976 Repl.Vol., 1978 Cum.Supp.), Art. 27, § 419A, and is found currently at § 11–207 of the Criminal Law Article. The statutory language and the legislative history of the initial Maryland child pornography statute suggest that the Legislature was targeting the child pornography industry, *i.e.,* the creators and distributors of the material. The statute made it a felony to solicit, cause, induce, or knowingly permit a person under sixteen to engage as a subject in the production of obscene matter, or to photograph or film a person under sixteen engaged in an obscene act. *See* 1978 Md. Laws, Chap. 573. The bill file contains a letter from an Assistant Attorney General describing the bill as "legislation which is designed to prohibit the production and distribution of [child pornography] within the boundaries of this State ... complement[ing] the federal bill." Additionally, a member of the National Conference of State Legislatures testified before a subcommittee of the House Judiciary Committee detailing the steps being taken by states across the country to criminalize and "to prosecute those responsible for using children in obscene materials and selling them for profit."

In *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the United States Supreme Court reviewed a New York child pornography statute that prohibited material depicting sexual conduct by a child under sixteen, rather than merely "obscene" material. *See id.* at 750–51, 102 S.Ct. at 3351. The Court upheld the statute, holding that the First Amendment permits a state to proscribe the distribution of sexual materials involving minors without regard to an obscenity standard. *See id.* at 760–61, 102 S.Ct. at 3356–57.

Congress responded to *Ferber* by enacting Pub.L. 98–292, the Child Protection Act of 1984, 18 U.S.C. §§ 2251 to 2254.

*See Outmezguine,* 97 Md.App. at 164, 627 A.2d at 547. That law amended the 1977 law, *inter alia,* to include depictions of "sexually explicit conduct" that need not be legally obscene and to redefine "minor" to include children ages sixteen and seventeen. *See id.*

The Maryland Legislature responded to *Ferber* with a series of amendments to Art. 27, § 419A. *See Outmezguine,* 97 Md.App. at 164, 627 A.2d at 547. In 1985, the General Assembly increased the fine under the statute from $15,000 to $25,000 and expanded the reach of the statute beyond obscene matters to include the knowing promotion, distribution, or possession with the intent to distribute of "any matter or other visual representation, which depicts a child engaged as a subject in sexual conduct." *See* 1985 Md. Laws, Chap. 494; *Outmezguine,* 97 Md.App. at 164–65, 627 A.2d at 547–48. As it had done with the promotion and distribution provisions in 1985, the Legislature subsequently expanded the reach of the provision outlawing the photographing or filming of children beyond "obscene" matter to specifically include children engaged in "sexual conduct." *See* 1986 Md. Laws, Chap. 112; *Outmezguine,* 97 Md.App. at 165, 627 A.2d at 548. In 1989, the Legislature expanded each provision of the child pornography statute to include children ages sixteen and seventeen. *See* 1989 Md. Laws, Chap. 398; *Outmezguine,* 97 Md.App. at 165, 627 A.2d at 548.

Simple possession of child pornography was not a crime in Maryland until 1992. In 1992, the Legislature enacted Md. Code (1957, 1992 Rep. Vol., 1992 Cum.Supp.), Art 27 § 419B, making it a misdemeanor to "knowingly possess any film, videotape, photograph, or other visual representation depicting [a minor] engaged as a subject of sadomasochistic abuse or in sexual conduct, or in a state of sexual excitement." *See* 1992 Md. Laws, Chap. 443. The crime was punishable by a fine or not more than one year imprisonment, or both, for a first offense, and a fine or not more than two years imprisonment, or both, for a second or subsequent offense. *Id.* This section became § 11–208 of the Criminal Law Article.

Until 1996, the proscriptions against child pornography in Maryland made no reference to the use of computers. The Legislature amended § 419A(c) to read as follows: "Every person who photographs, films, *or by means of computer depicts or describes* a minor engaging in an obscene act or engaging in sexual conduct or sadomasochistic abuse" is guilty of a felony. 1996 Md. Laws, Chap. 443 (emphasis added).[3]

The Legislature included the words "or describe" in the 1996 amendment to ensure that the provision included pornographic texts.[4] During the 1995 legislative session, the session before the Legislature passed the amendment adding computers, the Senate passed Senate Bill 22. Senate Bill 22 added nearly identical language as was added in the 1996 session, except that Senate Bill 22 added "depict," not "depict or describe." *See* "Bill Analysis" in the bill file for Senate Bill 133. Senate Bill 22 received an unfavorable report from the House Judiciary Committee. *Id.*

The bill passed in the 1996 session originally did not include the words "or describe." The bill file contains a September 4, 2005 draft of Senate Bill 133, which indicates that the bill originally was identical to Senate Bill 22. The drafter added by hand the words "or describe." This addition apparently stemmed from comments made by a reviewer written on the "Session of 1996 L[egislative] R[eference] Request Form." On September 6, the reviewer noted as follows: "Does (c) apply

---

3. The Legislature also amended Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 419A to add a section proscribing the compilation and transmission of data about minors for the purpose of inducing children to engage in unlawful sexual conduct or sadomasochistic abuse. *See* 1996 Md. Laws, Chap. 443; Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 419A(e). That provision is now § 11–207(a)(5).

    The Legislature did not need to specify computers in the provision prohibiting the distribution of child pornography, because Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 419A(d), now § 11–207(a)(4), proscribed the promotion, distribution, or possession with intent to distribute of "any matter or other visual representation or performance." That provision includes computers.

4. The constitutionality of the proscription of computer writings containing child pornography is not at issue in this case.

only to visual depiction (*i.e.* picture) or could it also be text that is pornographic (*i.e.* a story). I think you may want to clarify it." The Request Form indicates that the drafter noted this suggestion on September 25. The September 28 draft of the bill included this new language. The Senate adopted the bill in its revised form, and the House adopted the change following the Conference Committee. *See* "Conference Committee Report."

In 2002, as a result of the Code Revision, Art. 27, § 419A(b) through (g) was repealed and reenacted as § 11–207 of the Criminal Law Article and Art. 27, § 419B was repealed and reenacted as § 11–208.[5] The relevant provision of § 11–207

---

5. Section 11–208 does not specify computers, but instead encompasses computers within the term "other visual representation." *See Rutledge v. State,* 745 So.2d 912, 917 (Ala.Crim.App.1999) (construing a child pornography statute prohibiting possession of a "photographic or other visual reproduction" to include images stored on computers, computer disks, and the Internet); *State v. Cohen,* 696 So.2d 435, 438 (Fla.Dist. Ct.App.1997) (stating that the fact "[t]hat pornographic images of children are scanned into a computer rather than pressed onto the pages of a magazine, or that the images are stored on a hard drive rather than in a shoebox, does not change the fact that a defendant possesses pornographic representations of actual children"); *Perry v. Commonwealth,* 438 Mass. 282, 780 N.E.2d 53, 55 (2002) (concluding that the legislature's use of the broad term "visual material" in its child pornography statute was intended to encompass computer images and asserting that "[i]t matters not that the scene is captured in bytes rather than on conventional film"); *State v. Howell,* 609 S.E.2d 417, 421 (N.C.Ct.App.2005) (holding that the defendant's opening and saving of computer images of child pornography constituted criminal possession of those images). Section 11–208 applies to unopened computer files containing visual representations of child pornography notwithstanding the fact that computer hardware and software may be required to render the image visible. *See* 18 U.S.C. § 2256 (2005) (defining "visual depiction" to include "undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image"); *Perry,* 780 N.E.2d at 56 (reasoning that any distinction based on how the pornographic images are stored or communicated is immaterial given the harm the statute was enacted to address); *Commonwealth v. Hinds,* 437 Mass. 54, 768 N.E.2d 1067, 1074 (2002) (interpreting prohibited possession of a "depiction by computer" of child pornography to include not only computer files that are disseminated or reduced to hard copies, but also unopened files on a hard drive); *People v. Fraser,* 264 A.D.2d 105, 704 N.Y.S.2d 426, 429–30 (N.Y.App.Div.2000) (finding that graphic images stored on the defen-

contained two changes from § 419A. First, § 419A(c) was divided into two sections—"photograph and film" and "use a computer to depict or describe" were separated into § 11–207(a)(2) and (3) respectively. Second, the term "by means of a computer" was replaced with the term "use a computer." *See* 2002 Md. Laws, Chap. 26. As pointed out by the Revisor's Note, § 11–207 was derived from Art 27, § 419A without substantive change. *Id.*

Our review of the legislative history of § 11–207 supports our conclusion that "use a computer to depict or describe" means to use a computer to create. First, the inclusion of "or describes" in § 11–207(a)(3) indicates that the Legislature did not intend for the provision to include the downloading of files. It is clear that the recipient of a text file does not "describe" the subject matter of the text when the recipient downloads the file. Instead, the author describes the subject matter by writing the text, and the recipient copies and transfers the description onto the computer screen or drive. For example, a person who downloads a poem has not described a rose—the poet described the rose when writing the poem. The act of downloading a picture is more confusing because it involves an image within an image—the picture itself and the projection of the image onto the computer screen. The photographer depicts a subject by creating an image—the photograph. The recipient does not depict the subject of the picture, but rather copies or transfers the photograph onto the computer screen or drive. A person who downloads a picture of a rose does not depict the rose—the photographer depicts the rose when taking the picture. The inclusion of "or describe" thus elucidates the meaning of "depict" and further indicates that § 11–207(a)(3) does not proscribe the act of downloading files.

Second, as we have noted, the Legislature did not intend to change the substance of the statute when it bifurcated the

---

dant's computer fell within the statutory prohibition against possessing photographs of child pornography despite the fact that a computer graphic image is visible to the unaided eye only when processed through a computer).

following provision from the 1996 amended statute: "Every person who *photographs, films, or by means of computer depicts or describes* a minor engaging in an obscene act or engaging in sexual conduct or sadomasochistic abuse ... is subject to [a penalty]." Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 419A(c) (emphasis added). The terms "photographs" and "films" are verbs describing creative acts—a person takes a photograph or makes a film. Unfortunately, there is no equivalent verb for the creative act of depicting or describing by computer—a person cannot computer a computer. For that reason, the Legislature was compelled to add the long phrase "or by means of computer depicts or describes," despite the fact that the wording does not parallel the structure of "who photographs, films."

The original placement of the phrase "by means of computers depicts or describes" at the end of a list that included the creative verbs "photographs" and "films" indicates that the Legislature intended the phrase to mean "to create by means of computers." A summary of the proposed amendment contained in the bill file supports this conclusion. A "Bill Analysis" to Senate Bill 133 described the amendment as an expansion of the provision relating to photography and film making. The "Bill Analysis" summarized the bill as follows:

> "The bill *expands* a current child pornography law relating to certain types of photographs and film *to make it applicable to computer generated images and descriptions* of minors engaging in obscene acts or sexual conduct. Specifically, the bill makes it a felony to depict or describe, by means of a computer, a minor engaged in an obscene act or sexual conduct." (Emphasis added.)

Thus, the 1996 addition of the computer-related language with filming and photography reasonably can be understood as a recognition by the Legislature that the computer was a new technology which could be used to create child pornography.[6]

---

6. The New Jersey Supreme Court employed similar reasoning in *State v. Sisler,* 177 N.J. 199, 827 A.2d 274 (2003). Sisler was arrested for printing child pornography from a computer and charged with the

*JUDGMENT OF THE CIRCUIT COURT FOR ST. MARY'S COUNTY, AS TO THE CONVICTION UNDER § 11–207, REVERSED. CASE REMANDED TO THAT COURT FOR SENTENCING UNDER § 11–208. COSTS TO BE PAID BY ST. MARY'S COUNTY.*

---

violation of a statute similar to § 11–207(a)(2) and (3). The New Jersey provision provides as follows:

"Any person who photographs or films a child in a prohibited sexual act or in the simulation of such an act or who uses any device, including a computer, to reproduce or reconstruct the image of a child in a prohibited sexual act or in the simulation of such an act is guilty of a crime of the second degree."

N.J. Stat. Ann. § 2C:24–4b(4) (West 1995, 2005 Cum.Supp.). As in Maryland, the clause specifying computers was added as an amendment to the statute. *See Sisler*, 827 A.2d at 277. The New Jersey Supreme Court relied on the juxtaposition of "who uses any device, including a computer, to reproduce or reconstruct" with "who photographs or films" to conclude that "reproduce or reconstruct" means to create. The court stated as follows:

"The disputed language, fairly read, merely describes the computer-generation or other technological process that creates the prohibited image that the original creator or that another person, in turn, disseminates, possesses, or simply views. Stated differently, we consider the word 'reproduce' alongside the second-degree offenses to which it is held equivalent, including 'photograph[ing] or film[ing] a child in a prohibited sexual act[.]' The Legislature coupled the offenses of photographing and reproducing, indicating that they are of comparable gravity and worthy of identical punishment. The term 'reproduce' thereby takes on a comparable meaning."

*Id.* at 278. The court then held that Sisler's conduct did not fit within the statute. *See id.* at 280.